IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ELEXIA WIEDEL, | ) |
|       Plaintiff, | ) |
| v. | ) Case No. CIV-21-00168-JWD |
| BRENTWOOD EXTENDED CARE & REHAB, LLC, doing business as Brentwood Nursing Home Extended Care and Rehabilitation; and MANAGEMENT SERVICES, INC., doing business as BRENTWOOD EXTENDED CARE & REHAB, | ) |
|       Defendants. | ) |

**ORDER**

Before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint ("Motion"). [Doc. No. 8]. Defendants Brentwood Extended Care & Rehab, LLC ("Brentwood") and Management Services, Inc. move under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss Plaintiff Elexia Wiedel's Complaint [Doc. No. 2]. Ms. Wiedel has responded in opposition ("Response") [Doc. No. 20], and Defendants filed a reply [Doc. No. 23]. For the reasons stated below, the Court grants the Motion.

**I.     BACKGROUND**[1]

In May 2019, Ms. Wiedel began working as a certified nursing assistant at

---

[1] The Court recounts the facts based on the well-pled allegations in Ms. Wiedel's Complaint and construes them in the light most favorable to Ms. Wiedel. *See Serna v. Denver Police Dep't*, 58 F.4th 1167, 1169 n.1 (10th Cir. 2023).

Brentwood. Compl. ¶ 15. Ms. Wiedel "was visibly pregnant at the time of her hiring," but she did not have any pregnancy-related restrictions. *Id.* ¶ 16. About five months into her pregnancy, Ms. Wiedel's "then unborn child was diagnosed with low/slow intrauterine growth rate." *Id.* ¶ 17. Consequently, on October 24, 2019, Ms. Wiedel's obstetrician placed Ms. Wiedel "on pregnancy restrictions that allowed her to sit down, snack, and/or rest when needed." *Id.* ¶ 18. That same day, Brentwood's administrator, Stella McCoy, called Ms. Wiedel into her office, informed Ms. Wiedel that Brentwood could not have her on "light-duty," and advised that no such role existed at the facility. *Id.* ¶ 19.

In response, Ms. Wiedel asked Ms. McCoy if that meant she was being terminated. *Id.* ¶ 20. Ms. McCoy informed Ms. Wiedel "that Brentwood could not have her working there while pregnant and instructed [Ms. Wiedel] to re-apply after the birth of her child. *Id.* ¶ 21. Ms. Wiedel alleges that "Brentwood's actions in treating [her] differently than her non-pregnant, restriction-free coworkers and terminating her for her pregnancy and accompanying restrictions" violate Title VII, the Americans with Disabilities Act ("ADA"), and the Oklahoma Anti-Discrimination Act ("OADA"). *Id.* ¶ 22.

Ms. Wiedel filed Charge of Discrimination No. 564-2020-01654 with the United States Equal Employment Opportunity Commission ("EEOC") and the Oklahoma Attorney General's Office on or about July 29, 2020.[2] *Id.* ¶ 10; *see also* [Doc. No. 32-

---

[2] Defendants assert that Ms. Wiedel filed her Charge of Discrimination on July 29, 2020, and Ms. Wiedel does not dispute that date in her Response. *See* Response at 2; *see also id.* at 1 n.1. The Court notes, however, that there is no filed-stamped date on the Charge of Discrimination, and that Ms. Wiedel appears to have signed it on July 29,

1].³ Ms. Wiedel received a Notice of Right to Sue on March 22, 2021. Compl. ¶ 11.

Ms. Wiedel filed this action on June 11, 2021, asserting five claims: employment discrimination on the basis of sex/pregnancy in violation of Title VII and the Pregnancy Discrimination Act ("PDA") (Count 1); employment discrimination on the basis of sex/pregnancy in violation of the OADA (Count 2); employment discrimination on the basis of disability under the ADA (Count 3); employment discrimination on the basis of disability under the OADA (Count 4);⁴ and intentional infliction of emotional distress ("IIED") (Count 5).

## II.     LEGAL STANDARDS

Most of Defendants' arguments fall under Federal Rule of Civil Procedure 12(b)(6), as they assert that Ms. Wiedel has failed to state a claim upon which relief can be granted. However, Defendants' key arguments as to the OADA go to jurisdiction and are properly heard under Rule 12(b)(1). *See* Okla. Stat. tit. 25, § 1350(B) (requiring the filing of a timely charge before an employee may "have standing in a court of law to allege discrimination arising from an employment-related matter").

---

2020, and August 1, 2020. [Doc. No. 32-1 at 1]. In any event, the Court gives Ms. Wiedel the benefit of the earlier date.

³ Because Ms. Wiedel's Charge of Discrimination is central to her claims and referenced in her Complaint, and the parties do not dispute its authenticity, the Court considers it in analyzing the Motion. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).

⁴ Ms. Wiedel mislabels this as Count 3 in her Complaint.

A.    **Rule 12(b)(6)**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a complaint does not need detailed factual assertions, a pleading that offers only "labels and conclusions" or "pleads facts that are merely consistent with a defendant's liability" will not suffice. *Id.* (internal quotation marks and citations omitted). The burden is on the plaintiff to plead factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Under this standard, the Court accepts all well-pled factual allegations as true and views the allegations in the light most favorable to the nonmoving party. *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010). Conclusory statements, however, are not entitled to the assumption of truth and courts are free to disregard them. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

B.    **Rule 12(b)(1)**

Rule 12(b)(1) motions take one of two forms: a facial or factual attack. *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1148 n.4 (10th Cir. 2015). A facial attack questions the sufficiency of the complaint's allegations. *Id.* In reviewing a facial challenge, a district court must accept the allegations in the complaint as true. *Id.* However, in a factual attack, the moving party may go beyond the allegations contained

in the complaint and challenge the facts upon which subject matter jurisdiction depends. *Id.* A district court may not presume the truthfulness of the complaint's factual allegations when reviewing a factual attack on subject matter jurisdiction. *Id.* Rather, a court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts. *Id.*

Once challenged, the burden of proving subject matter jurisdiction is on the party alleging subject matter jurisdiction, here, the plaintiff. *United States ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787, 797–98 (10th Cir. 2002); *see also Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008) ("The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction."). Here, the only document Defendants ask the Court to consider is the Charge of Discrimination. [Doc. No. 32-1]. As noted above, this document is properly considered as part of the allegations of the Complaint under Rule 12(b)(6), which means it is also properly considered as part of a facial attack under Rule 12(b)(1). *See Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010). Therefore, the Court construes Defendants' challenge to subject matter jurisdiction of Ms. Wiedel's OADA claims as a facial attack.

## III.    ANALYSIS

Defendants seek dismissal of Ms. Wiedel's claims. With respect to Ms. Wiedel's Title VII and PDA claim, Defendants contend that Ms. Wiedel has not alleged that she was treated differently from others "similar in their ability or inability to work." Defendants assert that Ms. Wiedel lacks standing to bring her OADA claims because she

did not file her Charge of Discrimination within the statutory time frame. Defendants assert that Ms. Wiedel has failed to plead sufficient facts to state a disability under the ADA. Finally, Defendants contend that Ms. Wiedel has failed to plausibly assert an IIED claim under Oklahoma law.

**A.     Because Ms. Wiedel fails to state a claim under Title VII and the PDA for discrimination based on sex and/or pregnancy, the Court dismisses without prejudice Count 1.**

Title VII of the Civil Rights Act of 1964 prohibits a covered employer from discriminating "against any individual with respect to . . . terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). In 1978, Congress enacted the PDA, which added new language to Title VII's definitions subsection. The PDA specifies that Title VII's terms "because of sex" or "on the basis of sex" include "because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k). Under that provision, "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work . . . ." *See id.*

Claims under the PDA are analyzed under the disparate treatment analysis applied in *McDonnell Douglas*.[5]  *See E.E.O.C. v. Ackerman, Hood & McQueen, Inc.*, 956 F.2d 944, 947 & n.2 (10th Cir. 1992); *see also Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 228 (2015) (explaining that "an individual pregnant worker who seeks to show

---

[5] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

disparate treatment through indirect evidence may do so through application of the *McDonnell Douglas* framework"). The *McDonnell Douglas* requirement that a plaintiff establish a prima facie case "is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002).[6] The Court will not require that Ms. Wiedel plead her claim in the context of a prima facie case of pregnancy discrimination. Instead, the Court will consider whether the allegations in her Complaint give rise to an inference that she was discriminated against because of her pregnancy. One way to "demonstrate an inference of discrimination is to show that the employer treated similarly situated employees more favorably." *Luster v. Vilsack*, 667 F.3d 1089, 1095 (10th Cir. 2011).

Ms. Wiedel does not allege that she was terminated simply because she was pregnant. Compl. ¶¶ 16, 18–21. Rather, she acknowledges that Brentwood hired her when she "was visibly pregnant." *Id.* ¶ 16. Ms. Wiedel alleges that Defendants terminated her after her obstetrician placed her on pregnancy-related restrictions. *Id.* ¶¶ 18–21. To demonstrate a denial of an accommodation constituting disparate treatment under the PDA, Ms. Wiedel must ultimately show "that she belongs to the protected class, that she

---

[6] In clarifying the role of the *McDonnell Douglas* framework in a Rule 12(b)(6) analysis, the Tenth Circuit has explained that "[w]hile the 12(b)(6) standard does not require that [the plaintiff] establish a prima facie case in [the] complaint, the elements of each alleged cause of action help to determine whether [the plaintiff] has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012); *see also Morman v. Campbell Cnty. Mem'l Hosp.*, 632 F. App'x 927, 933 (10th Cir. 2015) (unpublished) ("The inferences offered by the *McDonnell Douglas* framework assist judges in resolving motions to dismiss by providing an analytical framework to sift through the facts alleged.").

sought accommodation, that the employer did not accommodate her, and that the employer did accommodate others 'similar in their ability or inability to work.'" *See Young*, 575 U.S. at 229 (quoting 42 U.S.C. § 2000e(k)).

Under the last element, the PDA "requires courts to inquire whether the employer treats pregnancy or pregnancy-related conditions differently than other medical conditions." *Ackerman*, 956 F.2d at 948 (citing *Newport News Shipbuilding & Dry Dock Co. v. E.E.O.C.*, 462 U.S. 669, 684 (1983)). Thus, the appropriate comparison is "between pregnant and nonpregnant workers." *Id.*

Ms. Wiedel, however, does not allege that Defendants accommodated others "similar in their ability or inability to work." Her conclusory allegation at paragraph 22 does not suffice, nor does her allegation that "her position remained open and/or was filled by a non-pregnant, restriction-free individual outside the class of protected persons to which [Ms. Wiedel] belonged." Compl. ¶¶ 22, 29. What is missing is any specific comparison between Ms. Wiedel and nonpregnant workers "similar in their ability or inability to work." For instance, if Ms. Wiedel had alleged that Defendants accommodate most nonpregnant employees with light-duty restrictions while categorically failing to accommodate pregnant employees with light-duty restrictions, then that might give rise to an inference of intentional discrimination. *See Young*, 575 U.S. at 230. Ms. Wiedel's allegations, however, indicate the contrary—she alleges that Ms. McCoy indicated that no light-duty "role even exists at [Brentwood]." Compl. ¶ 19. Thus, Ms. Wiedel fails to state a claim under Title VII and the PDA for discrimination based on sex and/or pregnancy, and the Court dismisses without prejudice Count 1.

**B.     Ms. Wiedel lacks standing to proceed with her OADA claims, so the Court dismisses without prejudice Counts 2 and 4.**

Defendants assert that Ms. Wiedel lacks standing to bring her OADA claims in Counts 2 and 4. Ms. Wiedel "does not contest the dismissal of her OADA claims." Response at 3 n.2. By statutory amendment in 2011, the Oklahoma Legislature explicitly imposed an administrative filing requirement in jurisdictional terms for employment-based discrimination claims. *See* Okla. Stat. tit. 25, § 1350(B). Section 1350(B) provides in pertinent part:

> *In order to have standing in a court of law to allege discrimination arising from an employment-related matter*, in a cause of action against an employer for discrimination based on race, color, religion, sex, national origin, age, disability, genetic information with respect to the employee, or retaliation, *an aggrieved party must, within one hundred eighty (180) days from the last date of alleged discrimination, file a charge of discrimination* in employment with the Attorney General's Office of Civil Rights Enforcement or the [EEOC] alleging the basis of discrimination believed to have been perpetrated on the aggrieved party.

Okla. Stat. tit. 25, § 1350(B) (as amended and effective May 7, 2013) (emphasis added).

The last date of alleged discrimination was October 24, 2019. Compl. ¶¶ 18–21; *see also* [Doc. No. 32-1 at 1]. Ms. Wiedel filed her Charge of Discrimination on or about July 29, 2020, which was 279 days after the termination of her employment with Brentwood. *See* [Doc. No. 32-1 at 1]. Because Ms. Wiedel did not file her charge within the statutory time frame, she lacks standing to proceed with her OADA claims under Okla. Stat. tit. 25,

9

§ 1350(B), and the Court dismisses without prejudice Counts 2 and 4.[7]

### C. Ms. Wiedel has failed to plead sufficient facts to state a disability under the ADA, and the Court dismisses without prejudice Count 3.

Under the ADA, "[n]o covered entity shall discriminate against a qualified individual on the basis of disability" in the hiring or employment process. 42 U.S.C. § 12112(a). A "disability" is "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . . ." *Id.* § 12102(1). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* § 12102(2)(A).

To demonstrate that an employer has discriminated based on disability, "an employee must show: (1) she is disabled within the meaning of the ADA; (2) she is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) she was discriminated against because of her disability." *Exby-Stolley v. Bd. of Cnty. Comm'rs*, 979 F.3d 784, 795 (10th Cir. 2020) (internal quotation marks and citation omitted). District courts within the Tenth Circuit have consistently concluded that pregnancy alone is insufficient to meet the definition of

---

[7] *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006) (explaining that "[a] longstanding line of cases from this circuit holds that where the district court dismisses an action for lack of jurisdiction, as it did here, the dismissal must be without prejudice"). The Court does not find it necessary to reach Defendants' alternative arguments that Ms. Wiedel failed to state plausible OADA claims.

"disability" under the ADA. *See Richards v. City of Topeka*, 934 F. Supp. 378, 382 (D. Kan. 1996), *aff'd*, 173 F.3d 1247 (10th Cir. 1999); *Spagnolia v. Charter Commc'ns, LLC*, Civil Action No. 21-cv-01787-KLM, 2023 WL 3317781, at *11 (D. Colo. May 5, 2023) ("It is well established under the ADA . . . that normal pregnancy and post-pregnancy conditions . . . are not disabilities."); *Ortiz v. Bank of Labor*, Case No. 21-2316-JAR-KGG, 2022 WL 2072722, at *6 & n.29 (D. Kan. June 9, 2022), *aff'd*, No. 22-3127, 2023 WL 3590699 (10th Cir. May 23, 2023) (unpublished); *Andrews v. Eaton Metal Prods., LLC*, Civil Action No. 20-cv-00176-PAB-NYW, 2020 WL 5821611, at *7 (D. Colo. Sept. 8, 2020) (explaining that "pregnancy without more" is not a disability under the ADA) (collecting cases); *Alexander v. Two Oaks Invs., LLC*, Case No. 23-cv-00406-SH, 2024 WL 3747166, at *7 (N.D. Okla. Aug. 9, 2024). Likewise, EEOC's regulations and Interpretive Guidance on Title I of the ADA advise that "[o]ther conditions, such as pregnancy, that are not the result of a physiological disorder are also not impairments. However, a pregnancy-related impairment that substantially limits a major life activity is a disability under the first prong of the definition." *See* 29 C.F.R. pt. 1630, app. (2024).[8]

Here, Ms. Wiedel does not allege facts to show that she had a pregnancy-related impairment or record of such an impairment that substantially limits a major life activity. In fact, very little is alleged about Ms. Wiedel's pregnancy-related restrictions. Her Complaint and Charge of Discrimination note only that as a result of Ms. Wiedel's unborn child being "diagnosed with low/slow intrauterine growth rate," Ms. Wiedel's

---

[8] This language is not different between the versions effective in July 2016 and July 2024.

obstetrician placed her on "restrictions that allowed her to sit down, snack, and/or rest when needed." Compl. ¶¶ 17–18; *see also* [Doc. No. 32-1 at 1]. Thus, the facts alleged do not satisfy the first or second prongs of the definition for "disability." *See* 42 U.S.C. § 12102(1)(A) and (1)(B).[9]

To the extent Ms. Wiedel attempts to add factual allegations in her Response to meet the definition under the third prong, i.e., "being regarded as having such an impairment," the Court disregards those allegations because Ms. Wiedel cannot amend her Complaint through her Response. *See* Response at 10–11; *see also Earles v. Cleveland*, 418 F. Supp. 3d 879, 892 n.3 (W.D. Okla. 2019), *aff'd*, 825 F. App'x 544 (10th Cir. 2020) (unpublished) (disregarding factual allegations in the plaintiff's response brief that were beyond the scope of her complaint because a plaintiff may not effectively amend a complaint by alleging new facts in a response to a motion to dismiss). "A 'regarded as' impairment under § 12102(1)(C) need not limit or even be perceived as limiting a major life activity—the employer need only regard the employee as being impaired." *EEOC v. UPS Ground Freight, Inc.*, 443 F. Supp. 3d 1270, 1285 (D. Kan. 2020). To show that Defendants regarded her as having an impairment, Ms. Wiedel

---

[9] Ms. Wiedel's Charge of Discrimination alleges that Brentwood received her pregnancy-related restrictions from Dr. Baldwin with the Warren Clinic on October 24, 2019, and that Stella and Pam (Stella's assistant) informed Ms. Wiedel that Brentwood could not have her on "light-duty" because no such role exists at the facility. *See* [Doc. No. 32-1 at 1]. Even if this is enough to establish "a record" of an impairment, Ms. Wiedel still does not allege how the impairment substantially limits a major life activity. *See, e.g., Bones v. Honeywell Int'l, Inc.*, 223 F. Supp. 2d 1203, 1222 (D. Kan. 2002), *aff'd*, 366 F.3d 869 (10th Cir. 2004) (explaining that "[t]he ADA's definition of 'disability' may be satisfied by 'a record' of an impairment that substantially limits one or more life activities"); *see also* 29 C.F.R. § 1630.2(k).

would need to allege "that (1) [she] has an actual or perceived impairment, (2) the impairment is neither transitory nor minor, and (3) the employer was aware of and therefore perceived the impairment at the time of the alleged discriminatory action." *See id.* (citing *Adair v. City of Muskogee*, 823 F.3d 1297, 1306 (10th Cir. 2016)). "Whether an impairment is transitory and minor is an objective determination." *Id.* (citing 29 C.F.R. § 1630.15(f)); *see also* 42 U.S.C. § 12102(3)(B) (explaining that § 12102(1)(C) does "not apply to impairments that are transitory and minor," i.e., impairments "with an actual or expected duration of 6 months or less").

Ms. Wiedel alleges that she was "visibly pregnant" when she was hired in May 2019. Compl. ¶¶ 15–16. She alleges that her obstetrician placed her on restrictions on or around October 24, 2019, about "five (5) months into [her] pregnancy." *Id.* ¶¶ 17–18. Additionally, she alleges that Ms. McCoy told her "to re-apply after the birth of her child." *Id.* ¶ 21. From the face of the Complaint, Ms. Wiedel's alleged impairment is objectively transitory in that it would have had "an actual or expected duration of 6 months or less." 42 U.S.C. § 12102(3)(B). Additionally, there are not sufficient factual allegations for this Court to reasonably infer that Ms. Wiedel has pled a non-minor perceived impairment. Outside of the alleged facts that Ms. Wiedel is in her fifth month of pregnancy, her unborn child is experiencing low or slow intrauterine growth in the womb, and Ms. Wiedel needs to be allowed "to sit down, snack, and/or rest when needed," there are no other allegations regarding diagnosis, treatment, potential complications to Ms. Wiedel or the unborn child, or seriousness of the condition. Thus, the facts alleged do not satisfy the third prong of the definition for "disability." *See* 42

U.S.C. § 12102(1)(C). In summary, Ms. Wiedel has failed to plead sufficient facts to state a disability within the meaning of the ADA, and the Court dismisses without prejudice Count 3.

**D.     Ms. Wiedel has failed to plausibly allege an IIED claim under Oklahoma law, and the Court dismisses without prejudice Count 5.**

Defendants assert that the factual allegations in Ms. Wiedel's Complaint are insufficient to plausibly state a claim for IIED under Oklahoma law. Specifically, Defendants contend that Ms. Wiedel has not sufficiently alleged that Defendants "engaged in extreme and outrageous conduct" and that "she suffered severe emotional distress." Motion at 9.

IIED in Oklahoma is governed by "narrow standards." *See Comput. Publ'ns., Inc. v. Welton*, 49 P.3d 732, 735 (Okla. 2002). To state a claim, a plaintiff must allege: "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *See id.* "The trial court acts as a gatekeeper regarding the outrageousness of the defendant's conduct and the severity of the plaintiff's distress." *Id.* (citing *Miller v. Miller*, 956 P.2d 887, 901 (Okla. 1998)). The second element requires a plaintiff to plead facts that plausibly establish "that the defendant's conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and that such conduct is regarded as atrocious and utterly intolerable in a civilized community." *See id.* Under the fourth element, a plaintiff must plead facts that plausibly show "that the emotional distress suffered . . . was

so severe that no reasonable person could be expected to endure it." *See id.* at 736 (internal quotation marks, brackets, and citation omitted).

Oklahoma courts have examined a variety of conduct claimed to be outrageous in the employment setting, establishing a very high bar for actionable conduct. Insufficient facts to support the tort were found where a plaintiff's female supervisor described, during a meeting, how sexual favors could be used to obtain business, made lewd remarks about the plaintiff, and openly made sexual comments in the presence of employees. *See Anderson v. Okla. Temp. Servs., Inc.*, 925 P.2d 574, 577 (Okla. Civ. App. 1996). Also deemed insufficient were allegations that an employer telephoned a plaintiff in the middle of the night and "browbeat him for hours," required him to do unnecessary work, and made derogatory sexual comments about his fiancé. *See Mirzaie v. Smith, Cogeneration, Inc.*, 962 P.2d 678, 682–83 (Okla. Civ. App. 1998). "In cases arising out of the workplace, Oklahoma appellate courts have found that a defendant engaged in extreme and outrageous conduct only when that defendant intentionally and persistently engaged in a course of conduct that harmed the plaintiff." *Garner v. Econ. Supply, Inc.*, Case No. 19-CV-0372-CVE-FHM, 2019 WL 4144315, at *3 (N.D. Okla. Aug. 30, 2019) (collecting cases).

Likewise, the Tenth Circuit, interpreting Oklahoma law, has emphasized the significant burden for IIED claims. *See, e.g.*, *Daemi v. Church's Fried Chicken, Inc.*, 931 F.2d 1379, 1388 (10th Cir. 1991) (affirming the district court's decision that an employer who called an employee derogatory names based on his national origin, compelled him to terminate or otherwise eliminate his Iranian subordinates because of their national origin,

required him to take a polygraph after two area stores were robbed, and belittled him publicly at seminars was not actionable for IIED claim under Oklahoma law); *Merrick v. N. Nat. Gas Co.*, 911 F.2d 426, 433 (10th Cir. 1990) (an employee did not allege facts sufficient to constitute IIED where he alleged that his supervisor harshly criticized, yelled, and cursed at him in front of others); *Hamby v. Associated Ctrs. for Therapy*, 230 F. App'x 772, 788 (10th Cir. 2007) (unpublished) (explaining that the plaintiff's allegations were insufficient to support an IIED claim where she had routinely sustained verbal assaults from her former supervisor).

Applying these principles to Ms. Wiedel's allegations and viewing those allegations in the light most favorable to her, the conduct alleged falls short of the type of "extreme and outrageous" conduct actionable under Oklahoma law. Termination of employment with the offer to re-apply does not rise to the level of "extreme and outrageous" conduct. Even if Ms. Wiedel could meet the threshold requirement of showing extreme and outrageous conduct by Defendants, she has not pled facts to show that the emotional distress she suffered was "so severe that no reasonable person could be expected to endure it." *See Welton*, 49 P.3d at 736 (internal quotation marks, brackets, and citation omitted). Ms. Wiedel states, in a conclusory fashion, that Defendants "inflicted severe emotional distress onto [her]." Compl. ¶ 65. This general assertion, without more, is insufficient to satisfy the fourth element of her IIED claim. Ms. Wiedel has failed to plausibly assert an IIED claim, and the Court dismisses without prejudice Count 5.

## IV.     **CONCLUSION**

For these reasons, the Court GRANTS Defendants' Motion to Dismiss Plaintiff's Complaint [Doc. No. 8], dismisses without prejudice Counts 1, 3, and 5 under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, and dismisses without prejudice Counts 2 and 4 under Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction.[10]

IT IS SO ORDERED this 13th day of January 2025.

JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE

---

[10] In the Response, Ms. Wiedel states that "if the Court finds that [she] has failed to state viable claims against Defendants, [the Court] should permit [Ms. Wiedel] an opportunity to amend her Complaint to cure the deficiency. Response at 15. Under Local Civil Rule 7.1(d), "[a] response to a motion may not also include a motion or a cross-motion made by the responding party." *See also* Fed. R. Civ. P. 7(b)(1) (a request for court action must be made by motion). The Court denies any request to seek leave made in the Response without prejudice to the submission of a proper motion. It is not clear to the Court that Ms. Wiedel can state plausible claims as to Counts 1, 3, and 5; and as for the OADA claims in Counts 2 and 4, she has not contested their dismissal. However, the Court will withhold its judgment of dismissal without prejudice on the current Complaint for fourteen days to see if Ms. Wiedel presents a proper motion for leave to amend Counts 1, 3, or 5. *See* Fed. R. Civ. P. 15(a)(2); LCvR 7.1(k). Absent a timely and proper motion for leave to amend before the Court's deadline, or some other timely filing, the Court will enter a judgment dismissing the Complaint [Doc. No. 2] without prejudice.